ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Air Services, Inc. ) ASBCA No. 59843
)
Under Contract No. W91QV1-12-C-0059 )

APPEARANCES FOR THE APPELLANT: Donald H. Spence, Jr., Esq.
Cynthia A. Becker, Esq.
Spence & Becker, LLC
Gaithersburg, MD

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
Army Chief Trial Attorney
Frank A. March, Esq.
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE MELNICK

Air Services, Inc., renovated part of a building for the government and seeks general conditions costs associated with certain delays. It has elected the Board's expedited procedure (Rule 12.2).* A hearing was held at the Board. The proceeding has included consideration of both entitlement and quantum. The appeal is sustained.

## FINDINGS OF FACT

1. The United States Army's Mission & Installation Contracting Command awarded Air Services Contract No. W91QV1-12-C-0059 on 26 September 2012 to design and renovate a portion of a building located on Fort Belvoir, Virginia. Air Services was to begin performance within 10 calendar days of receiving a notice to proceed and complete performance 270 days later. (R4, tab 1) Air Services' proposal, which became part of the contract, provided 10 to 12 weeks to acquire equipment and material after approval of its submittals, and 17 weeks on the site performing construction (R4, tab 1 at 2, tab 2; tr. 194-95). On 4 March 2013, the government issued a notice to proceed to Air Services, which established 29 November 2013 as the completion date (R4, tab 7).

---

* The Contract Disputes Act, 41 U.S.C. §§ 7101-7109, implemented by Board Rule 12.2, provides that this decision will have no value as precedent, and in the absence of fraud shall be final and conclusive and may not be appealed or set aside.

2. In late September 2013, Air Services discovered that the new HVAC system to be installed on the roof of the building might be too heavy for the existing structural steel. It inquired to the government about the matter. The response from the government engineer stated the government intended to salvage previously removed equipment to add to the roof supports. The government provided framing detail showing what it intended. (R4, tab 22; tr. 23-24) However, there was no salvaged steel available (tr. 24). On 4 November 2013, Air Services submitted a proposed change order to the government to add structural steel support framing for an additional $5,884 (R4, tab 29). The proposal included a total of $1,979.32 in general conditions compensation for Air Services' project manager and superintendent to arrange for the materials and install them (R4, tab 29 at 3; tr. 25-26). The proposal also reserved Air Services' rights to future compensation and time should the change have further impacts upon the project (R4, tab 29; tr. 25-27). On 16 December 2013, the government issued Modification No. P00005, which, among other things, funded additional structural support framing for the roof top unit in the amount of $5,885.05 (R4, tab 34 at 1-4; tr. 29). Air Services objected to the modification, refusing to sign it because it contained language that would release "the Government from any and all liability...for further equitable adjustments attributable to such facts or circumstances giving rise to the changes" (R4, tab 34; tr. 30, 33). This release issue was a general matter under consideration between the parties at the time (tr. 32).

3. Prior to receiving Modification No. P00005, Air Services requested its subcontractor produce shop drawings, which were approved by the government around the same time as the modification (tr. 33). Air Services received materials from its fabricator around 2 or 3 January 2014, and immediately installed the steel over a three-day period (tr. 34).

4. Had Air Services been able to install the HVAC system in late September 2013, it could have completed finishing work that required heat and dehumidification, such as painting, drywall installation, and carpet installation, by the 29 November 2013 contract completion date. However, because the HVAC system was not installed, Air Services could not commence some of those activities in October. Instead, they could not be completed until after the HVAC system became operational in early February 2014. (Tr. 34-37)

5. The contract also required Air Services to reuse electrical panel A, replacing the breakers with others to be obtained from the secondary market (tr. 100, 152-53, 209). The government knew that finding breakers would be difficult, and Air Services told it on several occasions that they could not be found (tr. 210). On 23 July 2013, Air Services inquired about the plan for panel A and, among other things, was told by the government's engineer on 26 July that the government was considering removing and replacing the panel. The engineer included modified drawings. (App. supp. R4, tab 76) On 29 August, the government issued a change order request for the demolition of panel A, and Air Services responded (R4, tabs 18, 21). On 25 October 2013, the government issued another change order request that contemplated reusing

panel A, but installing new breakers (R4, tab 26). Air Services also responded to that request (R4, tab 28). On 21 November 2013, the contracting officer notified Air Services that the government had changed its mind about seeking any changes in the original plan for panel A (R4, tab 32; tr. 50).

6. On 17 January 2014, Air Services once again communicated that the contract's treatment of panel A would not work. The government engineer responded on 30 January that his earlier revisions from July 2013 had replaced panel A. (App. supp. R4, tab 79) Accordingly, the engineer generated a 3 February change order request seeking pricing for each of three options for panel A (app. supp. R4, tab 82; tr. 55). On 5 February 2014, Air Services again informed the government that panel A could not be reused, noting that the required breakers were never manufactured (R4, tab 40). The alternative that the government adopted essentially repeated the solution proposed by the government's engineer in July 2013 (tr. 160-61). Air Services' 17 February proposal (revised on 25 February) deleted panel A, and installed new panels B and C. It included 20 hours in general conditions costs for the work of the project manager, various other items to be performed by labor, and the large majority of tasks to be performed by subcontractors. Air Services reserved its right to seek additional general conditions costs resulting from delays, changes in work, design deficiencies, supervision, management, and time extensions. (R4, tabs 43-44; tr. 57, 59) On 19 March 2014, the government issued Modification No. P00007, adding $70,000 of funding for new panels B and C (R4, tab 45). Air Services objected to the modification, refusing to sign it because it contained language that would release "the Government from any and all liability...for further equitable adjustments attributable to such facts or circumstances giving rise to the changes" (tr. 60). Air Services began performance of the changed work on 25 February (tr. 60). The specially made materials necessary to perform the work were delivered in early April (tr. 60-61). Air Services substantially completed the work by 24 April 2014 (tr. 62).

7. On 24 February 2014, Air Services submitted a change order request to the contracting officer for $247,900 in general conditions costs resulting from various contract delays (R4, tab 38). On 22 May 2014, it submitted a Request for Equitable Adjustment (REA) to the contracting officer for $155,733 (R4, tab 51). A 13 January 2015 letter by Air Services' counsel to the contracting officer characterized that REA as seeking a contracting officer's final decision (R4, tab 58). On 2 February 2015, Air Services revised its REA to $105,888 (R4, tab 64). The Board previously ruled this submittal was a claim. *Air Services Inc.,* ASBCA No. 59843, 15-1 BCA ¶ 36,146. The revised REA was denied by the contracting officer on 13 February 2015 (R4, tab 66). Air Services appealed to this Board on 19 February 2015.

## DECISION

Air Services primarily seeks the costs it incurred for additional time its project manager, superintendent, and laborers worked on the contract, beyond its expiration date,

3

because of the HVAC steel and panel A issues. Clearly, the project was delayed as a result of the HVAC steel issue. The existing roof structure could not support the new HVAC system (finding 2). The government did not issue a modification for the extra steel until after the contract completion date had expired (*id.*). Air Services then procured and installed the steel in early January, and had to mount the HVAC system, which became functional in early February (findings 3-4). Only then could it complete the finishing work that required heat from the HVAC (finding 4). Had this problem not occurred at all, and Air Services was able to install the HVAC in late September, it could have completed the finishing work by the contract completion date of 29 November 2013 (*id.*). Given the new circumstances presented, Air Services completion of the finishing work was delayed until early April. Although Modification No. P00005 compensated Air Services for general conditions costs arising from the acquisition and installation of the new steel (finding 2), it has not been compensated for the associated delay keeping its project manager and superintendent on the job past the contract expiration date until early April. Air Services may recover extended general conditions costs incurred from 29 November 2013 until 10 April 2014.

The government's indecision and confusion respecting panel A, from July 2013 until resolution on 25 February 2014 (findings 5-6), would also entitle Air Services to extended general conditions costs until that date. However, it is already recovering those costs through 10 April because of the HVAC steel issue. Air Services is not entitled to additional general conditions costs related to performance of the panel A modification because it included those costs in its price (finding 6). It has not shown any additional actions by the government that delayed performance of that work entitling it to anything more.

Air Services' project manager costs from 29 November 2013 through 10 April 2014, with burden, total $7,811 (R4, tab 64). Its claims for his services beyond that period of time are for work unrelated to any delays, or seek unallowable claim preparation expenses. *See Cocoa Electric Co.,* ASBCA No. 33921R, 94-1 BCA ¶ 26,298. Air Services' project superintendent costs through that date, with a 20% burden (as used in its records), total $32,566.68 (R4, tab 64). Air Services is also entitled to recover $432.13 to maintain temporary toilets on site through 10 April (*id.*). Air Services has not proven its own laborers performed any extra work because of the delay. Accordingly, its claim for labor is denied. Nor has it proven its electrical subcontractor incurred any general conditions costs resulting from these delays. Thus, its claim for those costs is also denied.

Adding 10% overhead and 10% profit on the entire amount, plus 6% sales tax on the toilets, reaches a total of $49,411.24. Air Services provided an $8,435.60 credit for unperformed work on its claim (R4, tab 64), reducing its recovery to $40,975.64.

4

## CONCLUSION

The appeal is sustained. Air Services is entitled to recover $40,975.64, plus interest under 41 U.S.C. § 7109 from 2 February 2014.

Dated: 17 March 2016

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59843, Appeal of Air Services, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals